# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUBIA ROSAURA SERNA (DOB xx/xx/1946), individually, LAURA QUINTANA, individually, FRANCISCO J. SERNA, individually, RUBIA ROSAURA SERNA (DOB xx/xx/1965), individually, JESUS SERNA, individually, and ROGELIO SERNA, individually,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF BAKERSFIELD, REAGAN SELMAN, individually, and DOES 1-100, inclusive,**<br><br>**Defendants.** | 1:17-cv-01290-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT CITY OF BAKERSFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 16)** |

## I. INTRODUCTION

This case arises from the shooting death of Francisco Serna ("Decedent"), an unarmed 73-year-old man, in the City of Bakersfield ("Bakersfield") by Officer Reagan Selman ("Selman") of the Bakersfield Police Department. Decedent's wife and children filed a Complaint on September 27, 2017, bringing claims for violations of 42 U.S.C. § 1983, negligence, battery, and the Bane Act against Bakersfield, Selman, and Doe Defendants. ECF No. 1. On February 22, 2019, Defendant Bakersfield moved for partial summary judgment on the first, fourth, and fifth causes of action, the 42 U.S.C. § 1983 claims brought against it. ECF No. 16. Plaintiffs filed an opposition on March 21, 2019, ECF No. 17, and Bakersfield filed a reply on March 28, 2019, ECF No. 20.

The motion is ripe for review, and this matter is suitable for disposition without oral argument.

1

*See* Local Rule 230(g). Having carefully considered the record in this case, the parties' briefing, and the relevant law, the Court **GRANTS** Defendant City of Bakersfield's motion in its entirety.

## II. BACKGROUND

According to the Complaint, at approximately 12:40 a.m. on December 12, 2016, Bakersfield Police Department received complaints concerning an armed man in the neighborhood on the 7900 block of Silver Birch Avenue in Bakersfield, California. ECF No. 16-2 (Statement of Undisputed Material Facts ("SUMF")) ¶ 1.[1] Eventually, Defendant Selman and five other Bakersfield police officers responded to the call. ECF No. 17-3 (Plaintiffs' Statement of Disputed Facts ("SDF")) ¶ 9.[2] Plaintiffs stated in their interrogatory responses that on or about November 14, November 25, November 28, and December 3 of 2016, Bakersfield police officers were called and responded to Francisco Serna's residence and were aware that he had dementia.[3] SUMF ¶¶ 5-7. On December 12, 2016, the night of the fatal shooting giving rise to this suit, the Bakersfield Police Department Communications Center added a hazard notification to the dispatching officers, stating that the homeowner Francisco Serna had dementia and giving the name and phone number of a daughter to contact if necessary. *Id.*; *see also* ECF No. 17-1, Ex. L (Bakersfield Police Investigative Report re: December 12, 2016, Shooting of Mr. Serna). During their interaction with Decedent on December 12, all six officers drew their service firearms, and Defendant Selman shot Decedent six to seven times, resulting in his death. SDF ¶ 15; SUMF ¶ 1. Despite reports that Decedent had a gun, police did not locate one at the scene. SUMF ¶¶ 5-7. Decedent was 73 years old. *Id.*

---

[1] Where Plaintiffs object to facts in the SUMF, that is noted.

[2] Though this is labeled as a disputed fact, it is included here to provide context for the incident in question and is not material to resolution of the disputed legal issues in the motion.

[3] Plaintiffs' statement of disputed facts also discusses an incident on June 25, 2015, when Bakersfield Police Department officers responded to an incident at Mr. Serna's home when he was hallucinating. SDF ¶ 36. In addition, during the November 25, 2016, incident, Mr. Serna activated his home alarm, an event that his family members attributed to dementia, according to the Bakersfield Police Department report. *Id.* ¶ 38.

2

At the time of the incident, and presently, the City of Bakersfield Police Department uses policies developed by Lexipol, a commercial company.[4] Among the policies in place at the time of the incident was "Communications with Persons with Disabilities." SUMF ¶ 19. Peace Officer Standards and Training ("POST") is a statewide, quasi-governmental organization populated by law enforcement executives and advisers. *Id*. ¶ 21. POST sets forth standards for basic and continued training of peace officers and certifies that local law enforcement agencies and their officers are in compliance with POST standards. *Id*. POST also reviews and certifies local law enforcement agencies' training courses. POST conducts regular audits of local agencies. *Id*. POST sets forth basic training and fitness requirements for a peace officer and the officer's employing agency to receive POST certification. *Id*. ¶ 22. At the time of the incident, every Bakersfield Police Officer had completed a POST-certified training academy prior to becoming a police officer. *Id*. ¶ 25. As a general matter, the Bakersfield Police Department observes POST training standards and provides ongoing internal training. *Id*. ¶ 24.[5] At the time of the incident, Defendant Selman had completed the POST-certified academy offered by the Bakersfield Police Department. *Id*. ¶ 26.

Plaintiff retained police procedures expert Roger Clark as an expert witness in this case. *Id.* ¶ 10. In his report, Mr. Clark concludes that "training dealing with the mentally ill by the Bakersfield Police Department at the time of this event was seriously deficient." *Id*. ¶ 11. In the report, he does not cite any other similar incidents or constitutional violations by officers of the Department. *Id*. ¶ 12. Plaintiffs also cite no other specific similar incidents in their discovery responses. *Id*. ¶ 17. Mr. Clark's report also states that the Bakersfield Police Department "appears to have endorsed the dangerous and out of

---

[4] Plaintiffs object based on lack of foundation as to what Lexipol does or how it operates. ECF No. 17-2 (Plaintiffs' Response to Undisputed Facts). The statement is from the Declaration of Jeremy Grimes, a Captain with the Bakersfield Police Department. SUMF ¶ 18; ECF No. 16-4 (Declaration of Jeremy Grimes ("Grimes Decl.")) ¶¶ 1-2. The objection is overruled.

[5] Plaintiffs object on the basis of completeness. ECF No. 17-2 ¶ 24. Though they do not dispute that the statement is true as a general matter, they argue that the Bakersfield Police Department failed to update and train its officers on interacting with individuals with disabilities, which is discussed more fully below.

3

policy tactics that are connected to this incident," *id*. ¶ 13, and that "the ratification of this incident by the BPD also demonstrates an existing custom and practice within the department of an unconstitutional use of deadly force," *id*. ¶ 15.

Mr. Clark notes in his expert report that the basic POST curriculum includes training specific to people with mental illness in Learning Domain 37. ECF No. 16-3, Ex. D (Clark Report, dated Nov. 12, 2018) at 19. In opposition to the motion for partial summary judgment, Plaintiffs submit that an updated version of Learning Domain 37, version 6, was issued in April 2016.[6] SDF ¶ 41. The Bakersfield Police Department did not train its officers on version 6 of Learning Domain 37 prior to the shooting on December 12, 2016. *Id*. ¶ 48.

### III. <u>STANDARD OF DECISION</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation

---

[6] As discussed below, Bakersfield objects to consideration of this document on both procedural and substantive grounds.

4

omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

## IV. DISCUSSION

Defendant moves to dismiss the first, fourth, and fifth causes of action, all of which are premised on liability under 42 U.S.C. § 1983.

### A. 42 U.S.C. § 1983

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015). A municipality can only be held liable for

injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. More generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citations omitted); *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). "A policy can be one of action or inaction," *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), and can be formal or informal. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988). The standard for deliberate indifference for a governmental entity is an objective one. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

**1.     First Cause Of Action: Fourth Amendment – Excessive Force (42 U.S.C § 1983)**

The first cause of action is against all Defendants, for Defendant Selman's alleged use of excessive force in shooting Decedent multiple times, resulting in his death. Compl. ¶¶ 24-25. This cause of action does not allege any policy, custom, practice, or lack of training on the part of Defendant Bakersfield. The claim against Bakersfield rests only on vicarious liability. *Monell* is clear, however, that "a municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Instead, a municipality can only be held liable for injuries caused by the execution of its

policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id*. at 694. Because this claim includes no allegations about any policy of custom and instead names the Bakersfield "solely because an injury was inflicted by its employee[] or agent[]," *Long*, 442 F.3d at 1185, Defendant Bakersfield's motion for summary judgment on the first cause of action is **GRANTED**.

### 2. Fourth Cause Of Action: Inadequate Training

"A county's failure adequately to train its employees to implement a facially valid policy can amount to deliberate indifference." *Long*, 442 F.3d at 1188 (citing *Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004), and *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1088 (9th Cir. 2000)). While inadequacy of training may constitute a "policy" giving rise to *Monell* liability, "adequately trained [employees] occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). Therefore, a claim of inadequate training is only cognizable under § 1983 "where [the County]'s failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392. In order to show that a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In certain cases, however, a showing of "obviousness . . . can substitute for the pattern of violations ordinarily necessary to establish municipal liability." *Connick*, 563 U.S. at 63. The Supreme Court has thus left open "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."[7] *Id*. at 64. *See also Wereb v. Maui County*, 830 F. Supp. 2d 1026, 1033 (D. Haw. 2011) ("Emphasizing its difficulty of proof, *Connick*

---

[7] The Supreme Court discussed the sort of circumstances egregious enough to warrant single-incident liability, such as the hypothetical scenario, initially raised in *Canton*, of "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10). The Court described the *Canton* hypothetical as an extreme one, in which "the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Id*. at 67.

7

nevertheless left open (as a general matter) the exceptional possibility that a failure in a municipality's training program could be so obviously deficient that it could lead to liability for damages resulting from a single violation."). The circumstances under which courts will find that a failure to train imposes *Monell* liability "generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about 'the specific scenario related to the violation.'" *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) (quoting *Connick*, 563 U.S. at 67).

Plaintiffs argue that no pattern of constitutional violations is required where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1186 (quoting *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997)). Because it is obvious that police officers will encounter mentally ill individuals, they argue, failure to train them for a situation that city policymakers know to a "moral certainty" will occur can amount to deliberate indifference to constitutional rights. ECF No. 17 at 10-11 (quoting *Canton*, 489 U.S. at 390 n.10).

Plaintiffs point to an update to Learning Domain 37, version 6.0, which they contend was promulgated by the California Commission of Peace Officer Standards and Training in April of 2016. This update came out eight months prior to the incident at issue in this suit and specifically discusses how to identify common neurological disorders such as dementia and sets forth guidelines for communicating with people who have dementia.[8] Plaintiffs argue that despite the availability of this sort

---

[8] Learning Domain 37 provides, in pertinent part, under "Communication":

> When dealing with dementia, identify yourself as a peace officer. Explain the circumstances for the contact in a non-threatening manner. Maintain eye contact. Speak slowly in a calm manner. Consider non-verbal communication methods. Reduce radio volume or external loud noises if possible. Avoid confinement where possible, while maintaining officer safety. Only the contact officer should communicate with the person, whenever possible.

ECF No. 17-1, Ex. R at 3-4.

8

of training, Defendant Bakersfield never trained Defendant Selman on how to deal with any mentally ill individuals after his graduation from the policy academy, even though this training was available and that it was foreseeable that members of the police force would interact with individuals with dementia, as Defendant Selman admitted he had done on prior occasions. Plaintiffs claim that failure to train resulted in Defendant Selman's lack of knowledge of protocol and resulted in his "acting recklessly."

Bakersfield objects that Learning Domain 37 was not disclosed until four months after the close of fact discovery and that Plaintiffs' written discovery responses prior to that point had not given any indication that they intended to rely on that document specifically or a single-incident theory of liability based on failure to train more generally. Citing Federal Rule of Civil Procedure 37, Bakersfield seeks exclusion of this document on the basis that it was not turned over during fact discovery and not mentioned in any interrogatory response. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Bakersfield also objects on the merits of Plaintiffs' claims about this document and Defendant Selman's training. First, Bakersfield argues that Plaintiffs have done nothing to authenticate the Learning Domain or to support the idea that it was publicly available prior to December of 2016; Bakersfield argues that it was not finalized until February 2017, two months after the incident giving rise to this litigation. It further argues that Plaintiffs failed to offer any other evidence that other police departments had implemented this Learning Domain by April 2016 or that any police officers undergo POST training after graduating from the police academy at all. Second, Bakersfield cites evidence that Defendant Selman completed POST training in 2015, which included the POST Learning Domain in effect at that time covering the policies for interacting with individuals with disabilities, ECF No. 16-4 ¶ 10, and states that he completed another course in May 2016 covering individuals with "Mental

Conditions." *See* ECF No. 20-1, Ex. C at 2.[9]  In addition, Bakersfield argues, it has a policy covering interactions with individuals with disabilities.  ECF No. 20 at 6 (citing 16-3, Ex. C (Plaintiffs' interrogatory responses noting that the Bakersfield Police Department Communications Department had included a hazard notification to officers dispatched to respond to the scene before the fatal incident, noting that the homeowner (Decedent) had dementia and giving name of daughter and daughter's cell phone number)); *see also* ECF No. 17-1, Ex. L (Bakersfield Police Investigative Report re: December 12, 2016, Shooting of Mr. Serna).

The Court need not rule on whether the Learning Domain update should be excluded for failure to disclose, whether the document was available, or whether Defendant Selman underwent any other training after his graduation from the academy in the year before the incident at issue.  Even if Defendant Selman had undergone no post-academy training on interacting with people with dementia, and even if the update to Learning Domain 37 was available prior to the shooting of Decedent, Plaintiffs have not demonstrated that a genuine issue of material fact exists for the failure-to-train claim.

Plaintiffs put forward no evidence of even a single other similar incident that would have put Bakersfield on notice about purported deficiencies in their training regimen with respect to individuals with dementia.  Plaintiffs instead rest on a single-incident theory of liability, a "rare" situation where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.  A plaintiff need not show a pattern where a "violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1188.  Plaintiffs do not argue that Bakersfield utterly failed to train Defendant Selman on how to interact with individuals with dementia, but instead rest their argument on

---

[9] The document supporting this statement was submitted for the first time in reply.  Plaintiffs did not object to this evidence, but as discussed in text, the document is not necessary to the resolution of this motion, and the Court does not consider it.

10

a failure to do "post-academy" training. Defendant Selman testified that he received brief training at the academy on how to interact with people with dementia, and the Department had a policy for interacting with individuals with disabilities. ECF No. 17-1, Ex. C at 78:9-15 (Selman testimony re: training); ECF No. 16-4 (Declaration of Jeremy Grimes, Captain in Bakersfield Police Department) ¶ 3 (stating that Bakersfield Police Department policies included at the time of the incident "Communications with Persons with Disabilities"), ¶ 9 ("At the time of the incident, Defendant Reagan Selman had attended and successfully completed the POST-certified academy offered by the Bakersfield Police Department."). The argument that failure to do supplemental training amounted to deliberate indifference is a far cry from the example discussed in *Canton* and *Connick*, where a city arms its police force to capture fleeing felons while equipping them with "no knowledge at all of the constitutional limits on the use of deadly force." *Connick*, 563 U.S. at 67. The difference in the training that Defendant Selman received and the training that Plaintiffs argue should have taken place here is merely one of degree, and Plaintiffs do not in their opposition cite what information was in the supplement that was not in the original POST training that Defendant Selman underwent in 2015 before the shooting in December 2016.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. Of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). The facts, viewed in a light most favorable to Plaintiffs, do not show that Bakersfield "deliberately chose[] a training program that will cause violations of constitutional rights" by failing to train its officers on the updated POST Learning Domain 37 in the months immediately after it was released. The officers, including Defendant Selman, had already been trained on interacting with individuals with disabilities, and the Police Department had policies in place for communicating with individuals with disabilities. Plaintiffs' failure-to-train claim rests on the purported failure to train with updated training materials, but "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal

liability." *Connick*, 563 U.S. at 68. Plaintiffs thus fail to put forward adequate evidence that would permit a jury to find "the policymakers of the [City of Bakersfield] can reasonably be said to have been deliberately indifferent to the need" to use updated training. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

Plaintiffs also fail to satisfy the fourth prong of the *Monell* test for deliberate indifference. Plaintiffs fail to identify what, if any, changes the updated POST materials contained that would have altered the training materials. Without showing how this update differed from the prior version, Plaintiffs do not address how the policy was the moving force behind the constitutional violation, apart from a conclusory statement that if the officers "were properly trained and instructed through POST based policy on how to deal with individuals with dementia, they would not have conducted themselves in the reckless and dangerous manner in which Selman handled the situation, and a different outcome would likely have resulted." ECF No. 17 at 14. Bakersfield's police officers did undergo training on dealing with individuals with mental illness. Plaintiffs fail to show how using the updated version of Learning Domain 37 would have changed the training program from one exhibiting deliberate indifference to citizens' constitutional rights to one that would have trained its officers to prevent the constitutional deprivation that allegedly resulted here, such that the failure to employ the updated training module could be characterized as the moving force behind the constitutional violation.

Single-incident liability for failure to train is reserved for egregious examples of municipalities electing not to train their employees, thereby disregarding the known or obvious risk that the omission in the training program would cause employees to violate citizens' constitutional rights. Plaintiffs successfully asserting single-incident theories of liability "generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about the specific scenario related to the violation." *Williams*, 26 F. Supp. 3d at 947. Bakersfield Police Department officers did undergo POST training on interacting with people with dementia and did operate under a policy governing the same topic. Plaintiffs' theory of liability based on the failure to

train using the recently updated Learning Domain 37 falls far short of meeting the failure-to-train standard and does not create a triable issue of material fact. Defendant City of Bakersfield's motion for summary judgment for *Monell* liability for failure to train is **GRANTED**.

### 3. Fifth Cause Of Action: Unconstitutional Custom, Practice, Or Policy

A policy is "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long*, 442 F.3d at 1185; *see also Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (same). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt*, 954 F.2d at 1474). A custom is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The Ninth Circuit has recognized that "a custom or practice can be 'inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233-35 (9th Cir. 2011) (citations omitted); *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two incidents are insufficient to establish a custom or policy"); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents of nonintervention were insufficient to support a policy).

Plaintiff argues that Bakersfield's failure to adopt or revise its policies to reflect the changes in Learning Domain 37 for interacting with individuals with dementia demonstrates deliberate indifference.

13

Bakersfield responds that Plaintiffs' argument is no different from the argument in support of the failure-to-train claim, and that more fundamentally, a single incident cannot support a claim for unconstitutional policy or practice.

A municipality may be liable for a policy deficiency if "facts available to city policymakers put them on actual or *constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Castro*, 833 F.3d at 1076 (emphasis in original). The relevant policy here under Plaintiffs' theory was using the prior version of Learning Domain 37, rather than using the most up-to-date version. Even putting aside Bakersfield's contention that Learning Domain 37 was not finalized until two months after the shooting, Plaintiffs have not met their burden to withstand the motion for summary judgment on this claim. Plaintiffs have not identified prior incidents that would have put Bakersfield on notice that failure to use version six of Learning Domain 37 was substantially certain to result in violations of citizens' constitutional rights. Nor have they identified facts to support their claim that officers trained on prior versions of Learning Domain 37 and operating under a City policy regarding interactions with individuals with disabilities was constitutionally deficient in a way that training on the latest version of Learning Domain 37 was not. Plaintiffs have thus failed to demonstrate facts supporting the existence of "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. at 1075 (quoting *Canton*, 489 U.S. at 385).

Bakersfield argues that for the same reasons that Plaintiffs have not raised a genuine issue of material fact on their other theories of *Monell* liability, they also have failed to do so on a theory of *Monell* liability based on lack of supervision, though this theory was not pled in the Complaint. Plaintiffs do not to respond to this argument. The Court accordingly finds that there is no genuine issue for trial on a lack of supervision. In addition, Plaintiffs concede that they are not pursuing a *Monell* claim based on ratification. ECF No. 17 at 14.

Accordingly, Defendant City of Bakersfield's motion for summary judgment for *Monell* liability for unconstitutional custom, practice, or policy is **GRANTED**.

**B.	Doe Defendants**

Defendants move for dismissal of the Doe Defendants, ECF No. 16 at 19, and Plaintiffs stipulate to the dismissal, ECF No. 17 at 14. Accordingly, the Doe Defendants are **DISMISSED**.

## V. CONCLUSION AND ORDER

For the reasons set forth above, Defendant City of Bakersfield's motion for partial summary judgment is **GRANTED**, and summary judgment is therefore granted to Defendant City of Bakersfield on the first, fourth, and fifth claims in the Complaint. In addition, the Doe Defendants are **DISMISSED** from this action.

IT IS SO ORDERED.

Dated: __**May 16, 2019**__                    _____/s/ Lawrence J. O'Neill_____
　　　　　　　　　　　　　　　　　　　　UNITED STATES CHIEF DISTRICT JUDGE